## HUDSON v. BREEDING.    (No. 8386.)

(Court of Civil Appeals of Texas. Dallas. July 3, 1920. Rehearing Denied Oct. 16, 1920.)

Livery stable and garage keepers ⬤═8(1)—No recovery for storage, where on tender of sequestration bond garage keeper replevied.

Where owner of automobile being held by a garage keeper for repair charges sued to recover automobile, and tendered sequestration bond to protect the garage keeper, and the garage keeper retained automobile by furnishing replevy bond, his lien did not cover storage charges for the period of time in which he was in possession of the automobile after having replevied it, since he would have been protected, without the retention of the automobile, by the sequestration bond.

Appeal from Hunt County Court; A. J. Gates, Judge.

Action by W. N. Hudson against L. A. Breeding. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Evans & Starnes, of Greenville, for appellant.

Clark & Sweeton, of Greenville, for appellee.

HAMILTON, J. Appellant instituted this suit against appellee in the county court of Hunt county to recover possession and title of an automobile and for damages.

Appellant alleged that he owned a certain automobile, describing it, and that he delivered it on a certain date at a garage operated in Greenville by appellee for repairs; that the machine was delivered to appellee at said garage under an agreement that appellee was to make the repairs, supplying all labor and material, for a small and trivial amount; that the work was to be done and the repairs made within two or three hours' time, and that appellant was to pay when the work was finished.

Appellant alleges that the repairs authorized by him would not exceed $10, but that plaintiff made charges for unauthorized repairs, which were excessive, and claimed charges amounting to $103, all of which in excess of $10 was unauthorized and illegal.

Appellant further alleges that appellee tore down the car, the engine, and the body, and kept it in that condition for a period of three weeks, and holds possession and refuses to deliver the car to appellant, unless appellant pays him $103 for the repairs made. Appellant also alleges the value of the use of the automobile to be $5 per day, and prays judgment for title and possession, and for $5 per day for the use of the car from August 3, 1918, to the date of trial.

Appellee answers, saying the car was delivered to him by appellant at the garage in a badly damaged and worn condition, with instructions from appellant to him to perform whatever work and to use whatever materials were necessary to put it in good running condition; that the instructions were carried out, and all work was done and all material supplied to put the car in good repair, as agreed between the parties, and that upon the completion of the repairs appellant refused to pay the reasonable, usual, and proper charges therefor, whereupon appellee, exercising his lawful right and having a lien on the car for said charges, refused to surrender possession of it, but held it in storage after appellant refused to pay the bill for repairs and labor, and that, in addition to the charges for repairs and labor, storage charges, amounting to $4 per month, have accrued since appellant declined to pay the charges and receive the car, to secure which storage charges a lien exists; and appellee asks judgment for the original debt claimed for labor and repairs, also for storage charges and for foreclosure of lien and order of sale.

A writ of sequestration for the automobile was applied for by appellant, and the writ issued and served on September 14, 1918, the date on which the suit was filed. On the same date appellee duly replevied, and under

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the replevy continued in possession of the property.

Upon trial the case was submitted to a jury upon special issues. The questions submitted by the court and the respective answers made by the jury appear as follows:

"Q. 1. What was the reasonable cash value of the repairs made by the defendant upon plaintiff's automobile? Answer: $101.60. Q. 2. Was there any repairs made upon plaintiff's automobile which were not authorized expressly or impliedly by plaintiff? Answer: Yes. Q. 3. If you have answered question No. 2, in the negative, that is, if you have found that plaintiff either expressly or impliedly authorized the making of all of the repairs that the defendant made upon his automobile, then you need not answer question No. 3. If, however, you find that some of the repairs so made was not authorized, either expressly or impliedly, then you answer this question: What was the reasonable cash value of the repairs made by the defendant upon plaintiff's automobile which were neither expressly nor impliedly authorized by the plaintiff, if any? Answer: $45.75. Q. 4. What was the reasonable cash value of the storage of plaintiff's automobile per month since the repairs were completed? Answer: $4.00. Q. 5. What was the reasonable cash value of the use of plaintiff's automobile to the plaintiff per month while the same was in possession of the defendant after the repairs were made? Answer: $7.00."

Each party duly moved the court to enter judgment upon the jury's findings to conform to his particular theory and contention. Appellee's motion to enter judgment was sustained, and judgment entered for $55.85 for work and material on the automobile, with interest on that sum from January 1, 1919. Judgment for $44 for storage after the automobile was replevied by appellee was entered. The lien was found to exist to cover the above amounts and foreclosure, and sale were ordered.

Appellant assails the judgment of the court because it awards the appellee $44 for storage of the automobile, and gives foreclosure of the lien asserted to cover both the amount awarded for labor and material and for storage after the car was replevied. It is our opinion that the findings of the jury and the evidence in the case do not, under the law of the case, sustain the judgment. Appellee, contending for nearly double the amount appellant owed for repairs, according to the jury's findings, refused to deliver possession of the car to appellant. Appellant, contending, it is true, that he owed much less than the amount for repairs found by the jury, sought to substitute as appellee's security a sequestration bond in lieu of his possession of the car. This bond, being in an amount double the value of the car, was quite sufficient to make appellee safe for all he claim-

ed, without retaining the car in his possession and storing it. He, of course, but exercised a legal right conferred by statute when he replevied; but, after having replevied, we do not think he could exercise a use of the property under the replevy which would make it contribute revenue to the business pursued by him, and by this process force upon appellant involuntary contribution to the business, compelling him, contrary to his wishes, thus to yield contribution through a course pursued by appellee with reference to his property not necessary to appellee's full protection, for which appellant had fully provided by a sequestration bond.

The evidence and the findings of the jury in this case we think present a set of facts which sustain us in saying that the disposition we make of this appeal is not inconsistent with or in conflict with this court's opinion in the case of Malcolm v. Sims-Thompson Motor Car Co., 164 S. W. 924. We undertake to mark out clearly a distinction between that case and the instant case. In that case the appellant, owner of the car, refused to pay the bill, and after the car had remained in storage several months, during which period demands for payment had been made and refused, the motorcar company gave the owner the notice required by statute as a step precedent to executing the lien and making sale, and advertised the car for sale. Then the owner instituted suit. The case was tried before a jury, and every contention of the motor company was sustained by the jury, which awarded the full amount claimed by it against the owner. There was no sequestration or other proceeding of any kind by the owner to take possession of the car and indemnify the claimant, as there was in the case under consideration.

We are accordingly of the opinion that to hold, as we do, that appellee under the facts of this case is not entitled to collect for storage contravenes neither the reasoning in the case of Malcolm v. Sims-Thompson, nor the conclusion thereby arrived at.

The finding of the jury that the reasonable cash value of the use of the automobile to appellant while it was in appellee's possession was $7 per month is not supported by any allegation or proof. The allegation is that the value of its use was $5 per month. The only evidence on this feature the record contains is appellant's testimony. He testified that the value of the use was $5 per month.

We conclude that the judgment ought to be reversed and the cause remanded; and it is so ordered.

Reversed and remanded.